IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:21-cr-00774 |
| | : | |
| Plaintiff, | : | Judge Solomon Oliver Jr. |
| | : | |
| -vs- | : | |
| | : | |
| BRANDON KERN, | : | **DEFENDANT'S SENTENCING** |
| | : | **MEMORANDUM** |
| Defendant. | : | |

Now comes Defendant, Brandon Kern, by and through undersigned counsel, Justin M. Weatherly, Esq., and respectfully moves this Honorable Court to consider a sentence sufficient, but not greater than necessary, to comply with and to achieve the statutory goals of sentencing under Title 18, United States Code §§3553(a) and 3661 for the reasons more fully explained in the attached Brief in Support, incorporated herein by reference.

Respectfully Submitted,

/s/ Justin M. Weatherly
JUSTIN M. WEATHERLY, Esq.
Reg. No. 0078343
Henderson, Mokhtari & Weatherly
1231 Superior Avenue East
Cleveland, Ohio 44114
(216) 774-0000
jw@hmwlawfirm.com
Counsel for Defendant Brandon Kern

**BRIEF IN SUPPORT**

I.    **STATEMENT OF THE CASE**

On or about October 28, 2021, the United States of America charged Defendant, Brandon Kern (hereinafter, the "Defendant" or "Mr. Kern") in a two (2) count indictment charging: Count One (1), that from September 15, 2021, through October 7, 2021, Defendant committed the offense of Enticement in violation of 18 U.S.C. § 2422(b); and Count Two, that on or about October 7, 2021, Defendant committed the offense of Interstate Travel to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b).

On or about November 2, 2021, Defendant pleaded Not Guilty to all counts of the indictment at his arraignment. On or about April 8, 2023, Defendant appeared before Magistrate Judge Thomas M. Parker and signed and entered a plea of Guilty to Count One (1) of the indictment, pursuant to a Plea Agreement (base offense level 32). (See Plea Agreement ¶15). Additionally, as part of Defendant's Plea Agreement, the Government and USAO recommended a three (3) level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). *Id.*

On or about August 3, 2023, the United States Pretrial Services and Probation Department prepared and published a Presentence Investigation Report ("PSR"). Defendant and the Government established an advisory guidelines computation with a base offense level of thirty-two (32) in their plea agreement. After deducting three (3) points for acceptance of responsibility, Defendant and Government established a Total Offense Level of **twenty-nine (29)**. (Doc. 36, PSR: PageID 154). The PSR does not reflect an identical calculation, and instead suggests a Chapter Four Enhancement under USSG § 4B1.5(b). If the five (5) level enhancement under USSG § 4B1.5(b)(1) is adopted, Defendant's Total Offense Level sits at thirty-four (34). (Doc. 36: Presentence Investigation Report, PageID 159). Defendant filed a timely *Objection to*

*the Presentence Investigation Report* on or about August 3, 2023. Defendant is currently scheduled to be sentenced before this Honorable Court on August 17, 2023.

Applying a total offense level of twenty-nine (29), the sentencing guidelines recommend a sentence between eighty-seven (87) and one hundred eight (108) months imprisonment. However, a conviction under 18 U.S.C. § 2422(b) provides a mandatory minimum of one hundred twenty (120) months. Therefore, Defendant respectfully requests this Honorable Court sentence him to the statutory minimum of one hundred twenty (120) months regardless of whether this Honorable Court follows the Plea Agreement or adopts the five-point enhancement as suggested in the PSR. Upon the imposition of his sentence, Defendant respectfully requests to serve his sentence at FCI Elkton in Lisbon, Ohio. Additionally, Defendant respectfully requests that this Honorable Court recommend him for any and all treatment programs available to him while incarcerated as Defendant's history of substance abuse impacted his behavior in committing the present offense.

**II.     LAW AND ARGUMENT**

Sentencing procedures changed fundamentally in the wake of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Whereas previously the Federal Sentencing Guidelines were essentially mandatory in nature, today they are "effectively advisory" in all cases. *Id.* at 245. Consequently, it is required that district courts impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing pursuant to 18 U.S.C. § 3553(a)(2). *See United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("[I]t is worth noting that a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose a 'sentence, sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)").

3

The Sixth Circuit has set forth a "procedure" for post-*Booker* sentencing determinations. "[O]nce the appropriate advisory Guideline range is calculated; the district court throws this ingredient into the section 3553(a) mix." *See United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006). In fashioning an appropriate sentence, the district court cannot presume that the Guideline range is reasonable but rather must also consider the factors enumerated in 18 U.S.C. § 3553(a) to determine if an adjustment is warranted. *Booker*, 543 U.S. at 245-46. Those factors include:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;
2) The need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed training, care or treatment;
3) The kinds of sentences available;
4) The kinds and range of sentence under the guidelines;
5) Pertinent policy statements by the Sentencing Commission;
6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7) The need to provide restitution.[1] 18 U.S.C. § 3553(a)(1).

The primary directive in 18 U.S.C. § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

[1] Neither the statute nor *Booker* suggests that any one of these factors is to be given greater weight than another. Thus, a Sentencing Guidelines range is but one of a group of factors that should be considered by the court and to give it any greater weight would be inconsistent with *Booker* which directs a sentencing court to consider all of the factors – many of which the guidelines either reject or ignore.

Per *Booker*, *supra*, a sentencing court is required to engage in a multi-step analytical process at sentencing. First, the court is to determine the applicable guidelines range. *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). After making appropriate findings of fact, the sentencing court must then determine whether a sentence within that range serves the factors set forth in § 3553(a). *Id*. Lastly, the sentencing court must articulate the reasons for the sentence imposed in light of the factors set forth in 18 U.S.C. § 3553(a). *Id*.

Since *Booker* and its progeny, the sentencing court may now consider even those mitigating factors that the advisory guidelines prohibit, e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. *See United States v. Ranum*, 353 F. Supp.2d 984 (E.D. Wisc. 20050 ("the guidelines" prohibition of considering these factors cannot be squared within the *Section 3553(a)(1)* requirement that the court evaluate the "history and characteristics" of the Defendant…thus, in cases in which a Defendant's history and characteristics are positive, consideration of all of the *Section 3553(a)(1)* factors might call for a sentence outside the guideline range"); *see also Kimbrough v. United States*, 552 U.S. 85, 1010 (2007) (holding that it has been established that although a sentencing court must "give respectful consideration to the guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well."); *Gall v. United States*, 552 U.S. 38, 50 (2007) (stating the "[g]uidelines should be the starting point and the initial benchmark," but sentencing courts must make an "individualized assessment" of the case "based on the facts presented" to determine the appropriate sentencing for the defendant.).

Many courts have shared the view that a person's punishment for wrongdoing can satisfy the need for respect for the law and punishment for one's act, by taking a holistic approach to sentencing, finding that the backdrop of a person's life is an important consideration when

setting out punishment, understand that people are, to a large degree, reflections of the environment in which they live. *See United States v. Mehta*, 307 F.Supp.2d 270, 275 (D.Mass. 2004) ("It is not at all uncommon in sentencing to put the crime in the context of the defendant's life."); *United States v. Blake*, 89 F.Supp.2d 328, 332 (E.D.N.Y. 2000) ("In determining a sentence, it is worth attempting to understand (as best one can) what set a defendant upon his illegal course."); *United States v. Cavera*, 550 F.3d 180, 189 (2nd Cir. 2008) (Stating that courts now have "wide latitude to decide the proper degree of punishment for an individual offense and a particular crime.").

To that end, Defendant respectfully requests for this Honorable Court to take into account the information included in this *Memorandum*. Mr. Kern submits that this Honorable Court's discretion is bounded only by equity and fairness, so long as the factors in 18 U.S.C. § 3553(a) are satisfied. "If the Supreme Court's ruling in *Booker* does anything, it gives a defendant hope that where the factors listed in Section 3553(a) warrant a lesser sentence that the Guidelines recommend, and where the Guidelines' goal of uniformity is not advanced, a judge can depart from the sentence recommend by the Guidelines." *United States v. Perez-Nunez*, 368 F. Supp.2d 1265, 1270 (D.N.M. 2005).

In making an individualized assessment of Mr. Kern's case, this Honorable Court will find that (1) Mr. Kern has fully accepted responsibility for his actions regarding the within matter; (2) Mr. Kern worked hard through a tough upbringing by involving himself in sports and tutoring to graduate from high school in good standing; and (3) Mr. Kern is a hard worker, dedicating himself to assisting his stepfather with the family business.

### A. SENTENCING COMPUTATION

Before applying any of the sentencing factors to Mr. Kern's case, Mr. Kern's total offense level should be computed as **29**, as understood by both parties at the time of the Presentence Report. The United States Probation and Pretrial Officer prepared the final disclosure as to Brandon Kern on or about August 3, 2023, to which Defendant filed a timely *Objection to the Presentence Investigation Report*. The PSR indicated an offense level of 34. (Doc. 36: PSR, PageID 159). Defendant has also been awarded a three (3) level reduction for his acceptance of responsibility in this case under U.S.S.G. §3E1.1. (Doc. 36, PSR: PageID 154). Further, a conviction under 18 U.S.C. § 2422(b) provides for a mandatory minimum of one hundred twenty (120) months. As such, Defendant respectfully requests this Honorable Court decline to adopt the total offense level as established in the PSR and sentence him to the mandatory minimum of 120 months under 18 U.S.C. § 2422(b).

### B. APPLICATION OF THE STATUTORY SENTENCING FACTORS TO THE FACTS OF THE CASE

"As the United States Supreme Court explained in *Rita v. United States*, 551 U.S. 338 (2007), a district court should begin all sentencing proceedings by correctly calculating the applicable guideline range. As a matter of administration and to secure nationwide consistency the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38 (2007). "Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district court judge should then consider all of the 18 U.S.C. § 3553(a) factors to determine whether they support the sentence requested by a party. In doing so, the district judge may not presume that the Guideline range is reasonable. [The district judge] must make an individualized assessment based on the facts presented." *Id*. (emphasis added).

This Honorable Court must make an individualized assessment based on the presented facts when imposing a sentence. This Honorable Court alone will decide the advisory guideline range under the Sentencing Guidelines, whether there is any basis to depart and/or vary from that range or impose a sentence outside the advisory guideline range, and what sentence to impose while comporting with the fact that a sentence must be "sufficient, but not greater than necessary" to achieve the purposes of federal sentencing.

In order for this Honorable Court to impose a sentence that is sufficient but not greater than necessary to comply with and achieve the statutory goals of sentencing under Title 18, United States Code §§ 3553(a) and 3661, this Honorable Court must also consider the sentences imposed upon similar defendants. Defendant has a criminal history score of zero (0), putting him in the criminal history category of I. Per the PSR and following the Plea Agreement, one hundred (100%) of offenders with similar characteristics as Defendant received on average a sentence of one hundred eleven (111) months imprisonment, with the median length of imprisonment being one hundred twenty (120) months. (Doc. 36, PSR: PageID 170). As such, Defendant respectfully requests this Honorable Court take the median length of imprisonment of one hundred twenty (120) months into account when imposing a sentence upon him.

III. **DEFENDANT'S BACKGROUND**

Brandon Kern was born on January 11, 1994, in Suffolk County, New York, from the union of Walter Kern and Rana Constanzo. Unfortunately, Mr. Kern's parents had a tense relationship, and filed for divorce when Mr. Kern was only two or three years old. Throughout the contentious divorce, Mr. Kern often felt caught between his parents, causing him immense hardship and negatively impacting his childhood. Although Mr. Kern's home life got better when his mother married his stepfather, Edward "Eddie" Costanzo, when Mr. Kern was around six or

eight years old, Mr. Kern's life became unsteady once again in 2008, when his stepfather filed for bankruptcy. To support themselves, the family was forced to sell some of their household belongings just to buy the bare essentials. When he was only 12 or 13, Mr. Kern tried alcohol for the first time to cope with the ongoing challenges thrown at him at such a young age. Throughout this time, Mr. Kern focused on sports to help keep him on track, but often struggled to fit in and build meaningful social interactions with his peers.

In 2012, Mr. Kern graduated from Bayport Blue Point High School. Although he initially struggled with reading and writing, Mr. Kern sought out tutoring and maintained good grades. Following high school, Mr. Kern attended Suffolk County Community College for two years to start building a career for himself. With dedication and eagerness to learn, Mr. Kern excelled. Keen on continuing his education at an academically renowned university, Mr. Kern transferred to the Ohio State University in 2014. While Mr. Kern was excited to be out on his own, he struggled being away from his family, his support system, and once again began to feel alone. To cope with this loneliness, Mr. Kern turned to alcohol and stopped attending classes before ultimately returning home to his family in 2016, abandoning his education.

Despite life's hardships, Mr. Kern's family remained close and supportive of one another. With the support of his stepfather, Mr. Kern worked for him in his masonry business. Mr. Kern not only enjoyed the work, but he excelled. With his newfound talent, Mr. Kern helped to build his mother and stepfather's home, and even constructed a "cat village" in the backyard when the family dedicated themselves to animals and rescuing cats. In addition to his passion for building, Mr. Kern is a devout vegetarian and animal lover, always making a point to help any animal in need.

As acknowledged in the plea agreement, Mr. Kern took full responsibility for his actions in this case and understands the severity of the choices he made and the actions he took. With the support of his family, especially his stepfather, Mr. Kern is committed to righting his wrongs.

In Support of Mr. Kern's background, character, and conduct, Mr. Kern's family, friends, and colleagues submitted the following letters:

**Rana Costanzo**, Mr. Kern's mother, writes to this Honorable Court hoping to shed light on the person she knows Mr. Kern to be. When she thinks of her son, a few words come to mind: funny, intelligent, and caring. Mrs. Costanzo describes Mr. Kern as a man who has always been both respectful and caring to his peers and elders. Mrs. Costanzo states Mr. Kern is an avid vegetarian and animal lover with a kind heart, noting that Mr. Kern always goes out of his way to rescue any animal in danger. In addition to his love for animals, Mrs. Costanzo lists Mr. Kern as a talented cook, an incredible craftsman in many areas of construction, very athletic and a man who is interested in the world around him. Mrs. Costanzo recalls one of Mr. Kern's professors telling him, "You broke math," after he solved a problem in a new way.

Mrs. Constanzo knows her son is someone who could have affected the world in such a positive way. Despite the many disappointments Mr. Kern suffered throughout his life, Mrs. Costanzo states Mr. Kern made it through them without complaint. Mr. Kern's actions came as a shock to Mrs. Costanzo and the rest of the family. She wishes that with help, Mr. Kern can get back to the son she knew him to be, and that "anyone would benefit from knowing." Mrs. Constanzo appeals to this Honorable Court to sentence Mr. Kern in a "manner that will not attach a stigma to him for the rest of his life, anywhere he moves to." Mrs. Costanzo prays that one day her son will have the opportunity to have a family of his own. (Please see Exhibit A).

*Edward "Eddie" Costanzo*, although technically Mr. Kern's stepfather, considers Mr. Kern to be his real son. Mr. Constanzo remembers Mr. Kern coming into his life when Mr. Kern was only three years old. Since coming into his life, Mr. Constanzo explains that he was afforded the joy of witnessing Mr. Kern turn from such a good kid into a great young man. Mr. Constanzo describes Mr. Kern as respectful, a hard worker, an animal lover, and trustworthy. Mr. Constanzo recalls the times Mr. Kern worked for his brick and stone mason company, and how he frequently heard comments from customers about how hardworking and kind Mr. Kern was. Anytime he asked Mr. Kern to complete a task, Mr. Constanzo states the answer was always yes.

While Mr. Constanzo is deeply saddened and disappointed in Mr. Kern's decisions, he feels Mr. Kern is a good person and states that Mr. Kern is deeply loved by his family. Mr. Constanzo thanks this Honorable Court for its time and consideration. (Please see Exhibit B).

*Samantha Lake Costanzo*, Mr. Kern's nineteen-year-old sister, describes how close-knit and supportive their family is. She highlights the many nights they shared a home-cooked, vegetarian, family dinner, and how Mr. Kern loved to cook so he always made sure to help with the preparation. Samantha emphasizes the close bond she shares with her brother, remembering the many spur of the moment days trips spent with the family visiting animal farms or going to pick organic strawberries. During these trips, Samantha recalls the stereotypical family car ride, where she and Mr. Kern often fought together in the back seat over what movie to watch. However, in the end, Samantha highlights that Mr. Kern *always* let her watch what she wanted.

Samantha thinks of her brother as someone who always tries to help and as someone who will always go out of his way to help. Samantha expresses Mr. Kern's willingness to help others through an example, as she remembers when the family was building their new home in 2016. Samantha explains that Mr. Kern assisted all the plumbers and electricians with any problem that

11

arose and worked to solve them every time. Samantha always leaned on her brother and expresses that his absence has been "really hard on [her] in so many ways." Samantha misses her brother immensely. (Please see Exhibit C).

**James Hayes**, a long-time family friend of Mr. Kern and 35-year law enforcement veteran, writes to this Honorable Court to describe Mr. Kern as the man he is apart from his offense. Mr. Hayes has known Mr. Kern for over a decade and sees him only as a hardworking, helpful, honest, caring and respectful man. Mr. Hayes recalls visiting Mr. Kern's family's home throughout their construction period and witnessing Mr. Kern interact with both the construction crew and his parents. Mr. Hayes emphasizes that Mr. Kern's character was beyond reproach as he took the initiative with not only construction management tasks to take some of the renovation stress off his parents, but also spent time running errands for his mother.

Mr. Hayes stresses that Mr. Kern is filled with nothing but love and respect for his family and those around him. As a law enforcement officer, Mr. Hayes understands the Federal Sentencing Guidelines and the significance of Mr. Kern's possible sentence. Although he is shocked and disappointed in Mr. Kern's actions, Mr. Hayes hopes that this Honorable Court looks to Mr. Kern's life and work in imposing a sentence. Mr. Hayes thanks this Honorable Court for its time in this matter. (Please see Exhibit D).

**Salvatore "Sal" F. Camarda**, a long-time family friend of Mr. Kern and 30-year law enforcement veteran, highlights that over the ten years he has known Mr. Kern, Mr. Kern has been nothing but hardworking, respectful and kind. Mr. Camarda recalls the many times he has hired Mr. Kern and his father for construction projects at his home. Mr. Camarda emphasizes that every single time, Mr. Kern was respectful to both him and his wife and showed care in his work as well as for their property. Mr. Camarda notes that Mr. Kern was always hard working

and willing to help his father with whatever he needed. Mr. Camarda reflects on the conversations he's had with Mr. Kern about his college plans and passion for football. As a close family friend, Mr. Camarda speaks to how Mr. Kern is genuinely a good son and brother, frequently driving his younger sister to school and running errands for his parents.

Mr. Camarda thanks this Honorable Court for affording him the opportunity to write a letter on Mr. Kern's behalf. Despite his disagreement with Mr. Kern's poor decisions, Mr. Camarda truly believes Mr. Kern is a good human being and will be a productive member of society when given the opportunity. Mr. Camarda hopes this Honorable Court will take his letter into consideration when imposing a sentence upon Mr. Kern. (Please see Exhibit E).

WHEREFORE, Defendant, Brandon Kern, by and through undersigned counsel, Justin M. Weatherly, Esq., and pursuant to Rule 32 of the Federal Rules of Criminal Procedure, submits this *Sentencing Memorandum* for this Honorable Court's consideration in determining an appropriate sentence in this matter.

        Respectfully Submitted,

        /s/ Justin M. Weatherly, Esq.
        JUSTIN M. WEATHERLY, Esq.
        Counsel for Defendant Brandon Kern

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was electronically delivered to the following on this 9th day of August 2023:

**Margaret A. Kane**
Office of the U.S. Attorney – Cleveland
Northern District of Ohio
Ste. 400
801 Superior Avenue, W
Cleveland, OH 44113
216-622-3624
Email: margaret.kane@usdoj.gov

                                              /s/ Justin M. Weatherly, Esq.
                                              JUSTIN M. WEATHERLY, Esq.
                                              Counsel for Defendant Brandon Kern